# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50943

United States Court of Appeals
Fifth Circuit

**FILED**

June 12, 2018

Lyle W. Cayce
Clerk

CHARLTON BRADSHAW,

Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:14-CV-619

Before KING, JONES, and GRAVES, Circuit Judges.

PER CURIAM:*

Charlton Bradshaw, a Texas prisoner, appeals the district court's dismissal of his 28 U.S.C. § 2254 petition under the Antiterrorism and Effective Death Penalty Act of 1996. We granted a certificate of appealability on the procedural issue of whether the § 2254 petition was timely in light of Bradshaw's efforts to obtain rehearing of his petition for discretionary review

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-50943

in state court. Bradshaw allegedly filed a timely motion for rehearing within 15 days of the denial of his petition for discretionary review of his state court conviction pursuant to Texas Rule of Appellate Procedure 79.1. Upon learning that the Texas Court of Criminal Appeals never received the motion, he filed another motion for rehearing outside of the 15-day period in which he asserted that the first motion was timely under the prison mailbox rule and attached documentary evidence of the mailing of his prior motion. The Texas Court of Criminal Appeals then denied Bradshaw's motion for rehearing as "untimely," though it did not explain why the prison mailbox rule did not apply. The issue here is whether the prison mailbox rule applies as to render his motion for rehearing timely and therefore properly filed. If so, then his § 2254 petition is timely. As the determination of whether his motion for rehearing was properly filed is a matter of state procedural law, we defer to the Texas Court of Criminal Appeals's conclusion of untimeliness and implicit refusal to apply the prison mailbox rule. Accordingly, we now AFFIRM.

## I.

On March 1, 2011, Charlton Bradshaw was convicted of capital murder and sentenced to life in prison. A couple of months later, the judgment was affirmed on direct appeal. *See Bradshaw v. State*, No. 04-11-00173-CR, 2012 WL 1648218, at *1 (Tex. App.—San Antonio May 9, 2012, pet. denied) (mem op., not designated for publication). The Texas Court of Criminal Appeals ("TCCA") denied Bradshaw's petition for discretionary review ("PDR") on October 3, 2012. Bradshaw alleges that he filed a timely motion for rehearing on October 15, 2012. About a month after Bradshaw purportedly mailed the motion for rehearing, he sent a letter inquiring about the receipt of the motion. The TCCA responded, stating that they had not received the motion.

On February 1, 2013, Bradshaw filed a motion with the TCCA that sought permission to resubmit his original motion for rehearing, invoking the

2

No. 15-50943

prison mailbox rule ("second motion for rehearing"). Along with this motion, he sent a document that shows he mailed something to the TCCA on October 15, 2012, though he did not attach a copy of the original motion. Ten days later, the TCCA determined that his motion for rehearing was "untimely" and stated that "[n]o action will be taken in this matter."

Bradshaw then filed his first state habeas petition on September 17, 2013. The TCCA dismissed the petition as noncompliant with Texas Rule of Appellate Procedure 73.1. He then filed a second state habeas petition on February 21, 2014. The TCCA denied the petition without written order on June 18, 2014. Bradshaw filed the instant § 2254 petition on July 2, 2014. The State moved to dismiss the petition as untimely. The magistrate judge recommended granting this motion. The district court overruled Bradshaw's objections, adopted the magistrate judge's recommendation, and dismissed the petition as untimely. Bradshaw appealed.

## II.

We review de novo a district court's dismissal of a habeas petition as time-barred. *Richards v. Thaler*, 710 F.3d 573, 575 (5th Cir. 2013). The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a one-year period of limitation for state prisoners to file for federal habeas relief. 28 U.S.C. § 2244(d)(1). This period begins to run from the latest of four specified dates set forth in § 2244(d)(1). The first of these dates is relevant to this case: "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Id.* § 2244(d)(1)(A). When, as here, a petitioner neither stops the appeal process before the entry of judgment by the state court of last resort nor pursues direct review with the Supreme Court, the one-year period starts to run from "the expiration of the time for seeking [direct] review." *Id.*; *see Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).

3

No. 15-50943

Specifically, the expiration of that time occurs at the conclusion of the 90 days that a party has to file for certiorari with the clerk of the Supreme Court. *See* Sup. Ct. R. 13.1; *Roberts*, 319 F.3d at 694. Those 90 days are calculated from (1) the date of the judgment entered by a state court of last resort, after denial of discretionary review, or (2) if a timely petition for rehearing is filed or an untimely petition for rehearing is entertained, either the date of the denial of rehearing or the subsequent entry of judgment if rehearing is granted. *See* Sup. Ct. R. 13.1, 13.3; *England v. Quarterman*, 242 F. App'x 155, 157–58 (5th Cir. 2007).

The date the judgment became final is at issue here. The State argues that Bradshaw's motion for rehearing was untimely and so the judgment became final 90 days after the date that the TCCA denied the PDR, which was October 3, 2012. According to the State, the one-year period started to run from the date the judgment became final and ended before Bradshaw filed his § 2254 petition. Additionally, the State contends that neither of the two state habeas applications tolled the one-year period because the first was improperly filed and the second was properly filed but outside of the one-year period. In contrast, Bradshaw asserts that his first motion for rehearing of his PDR was timely under the prison mailbox rule and therefore the judgment became final 90 days after the date of the denial of his second motion for rehearing, which was February 11, 2013. He concedes that his first state habeas application did not toll the one-year period, but states that the second did because it was properly filed within that period.

"Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether the petitioner is still able to seek further direct review." *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008). "As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal." *Id.*

4

No. 15-50943

Pursuant to Texas Rule of Appellate Procedure 79.1, a party must file a motion for rehearing within 15 days from the denial of the PDR. Bradshaw's first motion for rehearing—which the TCCA never received—was purportedly filed within this period, but his second motion was not. The district court failed to accurately address Bradshaw's contention that his § 2254 petition was timely because he filed a timely motion for a rehearing of his PDR. We thus granted a certificate of appealability on the procedural issue of whether the § 2254 petition was timely in light of Bradshaw's efforts to obtain a rehearing of his PDR.

Bradshaw argues that he filed a timely motion for rehearing of his PDR because the prison mailbox rule applies to his first motion. "[T]he ultimate question is whether [the prisoner's] state petition complied with [the TCCA's] procedural requirements." *Stoot v. Cain*, 570 F.3d 669, 671 (5th Cir. 2009) (per curiam). "[S]tate courts have the right to interpret state rules of filing." *Richards*, 710 F.3d at 577 (quoting *Causey v. Cain*, 450 F.3d 601, 605 (5th Cir. 2006)). As such, we "are not bound" by *Houston v. Lack*'s "construction of federal filing rules." *Causey*, 450 F.3d at 605. In *Houston*, the Supreme Court concluded that a pro se prisoner's notice of appeal under Federal Rule of Appellate Procedure 4(a)(1)—which was mailed before, but officially filed by the court clerk after, the 30-day deadline—was deemed filed on the date it was delivered to prison officials for mailing. *See* 487 U.S. 266, 269, 276 (1988). We have recognized that in *Campbell v. State*, 320 S.W.3d 338, 344 (Tex. Crim. App. 2010), the TCCA found *Houston*'s reasoning persuasive and held that the prison mailbox rule generally applies in criminal proceedings. *See Richards*, 710 F.3d at 577. *Campbell*, like *Houston*, involved a scenario in which the prisoner mailed a pleading before, but the court clerk did not officially file the pleading until after, the relevant deadline. *See* 320 S.W.3d at 340. The TCCA

5

No. 15-50943

has never expressly addressed the issue of whether the prison mailbox rule applies when the document is never received by the court, as here.

Yet, today we do not need to engage in a lengthy examination of Texas law in order to make an *Erie* guess of what Texas courts would do in this lost-mail scenario. In the case at hand, Bradshaw presented the prison mailbox rule argument to the TCCA as the reason that his first motion for rehearing was timely, along with documentary evidence showing that he had sent mail to the TCCA on the date that he purportedly sent that motion in (though he did not attach a copy of the original motion). *See Stoot*, 570 F.3d at 672 ("[R]eference to prison mail logs usually answers the question of when the petition was actually mailed."). Despite Bradshaw's actions, the TCCA made a determination that his motion for rehearing was "untimely." It therefore implicitly rejected Bradshaw's timeliness argument based on the prison mailbox rule.[1] As the question of "when a state application is properly filed is a question of state law," *Richards*, 710 F.3d at 577, we defer to the TCCA's implicit refusal to apply the prison mailbox rule to this lost-mail scenario.

As the TCCA determined that the motion was improperly filed, the judgment became final 90 days after the TCCA denied the PDR. Accordingly, Bradshaw's § 2254 petition was filed outside of the one-year period of limitation. Further, his second motion for rehearing was also filed outside of this period and thus could not toll it. *See Wion v. Quarterman*, 567 F.3d 146,

---

[1] The TCCA did not set forth the grounds upon which it based its untimeliness determination. The potential grounds are (1) Bradshaw was not reasonably diligent in following up on his first motion, (2) his documentary proof was insufficient, and (3) the prison mailbox rule simply did not apply to this lost-mail situation. The first two are unlikely as Bradshaw repeatedly followed up on the first motion for rehearing and filed a second motion, as well as submitted evidence that mail was sent on the date that he allegedly sent in his first motion. Accordingly, the most likely reason for the TCCA's decision was that the prison mailbox rule did not apply to this lost-mail scenario.

148 (5th Cir. 2009) (stating that a state habeas application filed after the one-year limitation period has no tolling effect).

*Stoot* is distinguishable. In *Stoot*, the Louisiana prisoner allegedly mailed, but the Supreme Court of Louisiana ("SCLA") never received, a petition for discretionary review of the denial of state post-conviction relief. 570 F.3d at 671. When the prisoner learned that the SCLA did not receive his first petition, he sent another one after the deadline for appeal had passed. *Id.* The SCLA denied his petition in a one-word opinion. *Id.* at 670. We held, absent Louisiana Supreme Court caselaw directly on point, that a pleading purportedly mailed, yet never received, may benefit from the prison mailbox rule. *Id.* at 671. In prior caselaw, we have construed a one-word opinion from the SCLA to mean that the SCLA found the petitioner's application for review to be untimely. *See, e.g.*, *Butler*, 533 F.3d at 318–19. Even assuming arguendo that the SCLA's one-word opinion in *Stoot* indicates that the SCLA found the prisoner's petition to be untimely, *Stoot* can be distinguished from the case at hand. Our opinion in *Stoot* did not indicate that the prisoner there ever directly raised his mailbox-rule argument to the SCLA concerning the timeliness of his first petition. There was no indication in *Stoot* that the SCLA had an opportunity to confront whether the prison mailbox rule applied to that lost petition, as the TCCA had here.

We recognize that other circuits have held—in cases that concern either federal procedural law or the procedural law of other states—that the prison mailbox rule applies when the relevant court never received the filing. *See, e.g.*, *United States v. McNeill*, 523 F. App'x 979, 982 (4th Cir. 2013) (federal law); *Ray v. Clements*, 700 F.3d 993, 1004 (7th Cir. 2012) (Wisconsin law); *Allen v. Culliver*, 471 F.3d 1196, 1198 (11th Cir. 2006) (per curiam) (federal law); *Huizar v. Carey*, 273 F.3d 1220, 1222–23 (9th Cir. 2001) (California law).

No. 15-50943

We emphasize that our holding is made in reference to the TCCA's decision regarding Texas procedural law in this particular case. The TCCA has applied the prison mailbox rule where the pleading arrives to the court in a delayed fashion, but not where the pleading never arrives. *See Campbell*, 320 S.W.3d at 340, 344. Here, the petitioner sought the application of the rule to his never-received pleading, and the TCCA chose not to apply the rule. Our holding is narrow and limited to the facts at hand. We are not imposing an additional requirement on the prison mailbox rule. We are simply choosing not to extend the benefits of the rule where the TCCA had the opportunity to do so and did not. Should the TCCA expressly extend the prison mailbox rule to a lost-mail scenario in the future, or the record show that the TCCA never had the mailbox-rule argument presented to it, we would confront that scenario then and may reach a different result than the one today. *See Richards*, 710 F.3d at 577–78 (recognizing a change in Texas law applying the prison mailbox rule and the abrogation of a prior case of this circuit applying the old law, and then applying the new Texas law).

### III.

For the foregoing reasons, Bradshaw's motion for rehearing was untimely, and therefore his federal habeas petition was untimely. Accordingly, we AFFIRM the judgment of the district court.

8

No. 15-50943

JAMES E. GRAVES, JR., Circuit Judge, dissenting:

Charlton Bradshaw has offered sufficient evidence that he timely filed a motion for rehearing of his petition for discretionary review (PDR) in Texas state court and, thus, that his federal habeas petition under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was timely. Because I would vacate the district court's dismissal of Bradshaw's 28 U.S.C. § 2254 petition and remand, I respectfully dissent.

Bradshaw's PDR was denied by the Texas Court of Criminal Appeals (TCCA) on October 3, 2012. Bradshaw asserts that he timely filed a motion for a rehearing of his PDR in state court and that the filing tolled the one-year limitations period for filing his federal habeas application under AEDPA. *See* 28 U.S.C. § 2244(d)(1), (2). The state court apparently never received or filed Bradshaw's motion. But, Bradshaw has offered documentary evidence showing that he timely mailed the motion to the TCCA from the prison mailroom on "10-15-12." Further, Bradshaw repeatedly followed up on the motion he said he mailed and then filed a second motion after he found out the first one was not filed. The second motion was denied as untimely on February 11, 2013. The timeliness of Bradshaw's attempt to obtain a PDR rehearing determines when his conviction became final and when the limitations period began to run.

The district court did not decide whether the missing rehearing motion was timely, but acknowledged that a timely motion for rehearing would have delayed the finality of Bradshaw's conviction. However, as we said in granting a Certificate of Appealability (COA), the court's analysis did not properly account for the effect of the delayed finality combined with the tolling effect of

9

No. 15-50943

Bradshaw's second state habeas petition, which was filed within a year of finality.[1]

Under the prison mailbox rule, a pro se petitioner's pleading "is deemed filed at the moment it is delivered to prison authorities" for mailing. *Causey v. Cain*, 450 F.3d 601 (5th Cir. 2006). The majority affirms the district court's dismissal of Bradshaw's 28 U.S.C. § 2254 petition, saying it defers to the TCCA's "implicit refusal to apply the prison mailbox rule." I disagree with this conclusion.

The state court docket reflects that, after Bradshaw made multiple status inquiries and requests for assistance regarding his original motion for rehearing that were "refused" by the court, an "untimely" motion for rehearing was received on February 11, 2013. The disposition of that second motion states only, "Untimely Filed," and includes nothing to suggest that the court considered and rejected application of the prison mailbox rule.

We addressed a similar issue in *Stoot v. Cain*, 570 F.3d 669, 672 (5th Cir. 2009). In *Stoot*, Louisiana prisoner Anthony Ray Stoot purportedly mailed an appeal from the denial of post-conviction relief, but the Supreme Court of Louisiana never received it. *Id.* at 670-71. Stoot asked a family member to investigate after he failed to receive confirmation of receipt of his petition. *Id.* at 671. The family member discovered that the petition was never received and Stoot filed a second petition which was "denied." The district court then dismissed Stoot's federal application as untimely. *Id.* at 670-71. On appeal, we concluded that Louisiana would apply the prison mailbox rule even when the timely pleading was never received by the state court. *Stoot*, 570 F.3d at 671. Specifically, we concluded that:

---

[1] In granting a COA, we also concluded that the available pleadings and record did not clearly show that a COA was not warranted on Bradshaw's four claims of ineffective assistance of counsel.

> [A] pro se prisoner's pleading is deemed filed on the date that the prisoner submits the pleading to prison authorities to be mailed, regardless of whether the pleading actually reaches the court. Under such a rule, it is of course incumbent upon the petitioner to diligently pursue his petition. A failure to inquire about a lost petition is strong evidence that the petition was, in fact, never sent.

*Id.* at 672. After noting that "reference to prison mail logs usually answers the question of when the petition was actually mailed," we concluded that "we are ill-equipped to determine whether Stoot's allegations are true." *Id*. at 672. Thus, we reversed and remanded to the district court for a factual inquiry into whether Stoot submitted a timely petition.

The majority attempts to distinguish *Stoot* on the basis that, "[o]ur opinion in *Stoot* did not indicate that the prisoner there ever directly raised his mailbox-rule argument to the SCLA concerning the timeliness of his first petition." However, our opinion also did not indicate that Stoot failed to present such an argument. This court said: "In his objections to the magistrate judge's report, Stoot, for the first time, asserted that he had mailed an earlier petition to the Louisiana Supreme Court on November 23, 2005, within the Rule X, § 5(a) deadline." *Stoot*, 570 F.3d at 671. There is no discussion of what Stoot did or did not argue to the Louisiana Supreme Court – only what he argued in the district court. Further, the Louisiana Supreme Court opinion offers no insight into what Stoot argued. *Stoot v. Louisiana*, 939 So.2d 1271 (La. 2006). Thus, I perceive no basis for distinction. Regardless, even if Stoot did not raise a mailbox-rule argument to the Louisiana Supreme Court, that is not sufficient to distinguish it from this case.

As the majority acknowledges, we already know that Texas applies the prison mailbox rule in both civil and criminal cases. *See Richards v. Thaler*, 710 F.3d 573, 577-78 (5th Cir. 2013).

11

No. 15-50943

Rejecting application of the prison mailbox rule when courts do not receive filings that were delivered to prison officials for mailing contradicts the very nature of the rule.  As the United States Supreme Court has said:

> The situation of prisoners seeking to appeal without the aid of counsel is unique. Such prisoners cannot take the steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk receives and stamps their notices of appeal before the 30-day deadline. Unlike other litigants, pro se prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the pro se prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. Pro se prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the pro se prisoner delivers his notice to the prison authorities, he can never be sure that it will ultimately get stamped "filed" on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access - the prison authorities - and the only information he will likely have is the

12

date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

*Houston v. Lack*, 487 U.S. 266, 270-72 (1988).

There is no exception for mail *never* "stamped 'filed.'" *Id*. To suggest that there is a distinction is to open the door for public officials to intentionally discard pro se inmate filings, leaving the inmates without recourse.

Further, the majority cites no authority for such a distinction. The majority attempts to derive support from Texas cases where the pleading arrived after the deadline. *See Campbell v. State*, 320 S.W.3d 338, 340, 344 (Tex. Crim. App. 2010). But *Campbell* says nothing about the prison mailbox rule not applying when a filing is never initially received. Instead, the language in *Campbell* and other similar cases supports the conclusion that Bradshaw's pleading was timely. Bradshaw's initial pleading was not received. After diligently following up on that pleading, Bradshaw resubmitted it. That resubmitted pleading arrived after the filing deadline – just like Campbell's pleading arrived after the deadline. However, since both timely submitted their pleadings to prison authorities for mailing, both should receive the benefit of the prison mailbox rule.

Additionally, as the majority acknowledges, every other circuit to consider this issue has concluded that the prison mailbox rule clearly applies even when the court never receives the filing. *See United States v. McNeill*, 523 F. App'x 979, 982 (4th Cir. 2013); *Ray v. Clements*, 700 F.3d 993, 1004 (7th Cir. 2012); *Jones v. Heimgartner*, 602 F. App'x 705 (10th Cir. 2015); and *Allen v. Culliver*, 471 F.3d 1196, 1198 (11th Cir. 2006); and *Huizar v. Carey*, 273 F.3d 1220, 1223 (9th Cir. 2001). The only cases not applying the rule are from states such as Nevada, which "has squarely rejected the prison mailbox rule for the filing of its state habeas corpus petitions." *Orpiada v. McDaniel*, 750 F.3d

No. 15-50943

1086, 1087 (9th Cir. 2014).  Texas has not rejected the prison mailbox rule.  *See Richards*, 710 F.3d at 577-78.

The issue here is not an extension of the prison mailbox rule, but merely the application of the existing rule under *Houston*, 487 U.S. at 270-72.  Instead, the majority has improperly imposed an additional requirement that the pleading actually reach the court and be acknowledged by the court.  This negates the very existence of the rule in Texas.  As there is no authority for doing so and it is contrary to both binding precedent and persuasive authority, I would vacate the district court's dismissal of Bradshaw's 28 U.S.C. § 2254 petition and remand.  Thus, I respectfully dissent.